WEISS & PAARZ
The Executive Plaza
2111 New Rd., Northfield, NJ 08225
(609)641-8400
ATTORNEYS FOR PLAINTIFFS
File No.:

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHANDANIBEN PARIKH; SEHAL PARIKH; and K.P., a minor, by and through her Guardians ad Litem, CHANDANIBEN PARIKH and SEHAL PARIKH<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; DOUGLAS GIBBENS, M.D.; COMMUNITY MEDICAL CENTER; JOHN DOE MEDICAL DIRECTORS A-Z (multiple fictitious persons); JOHN DOE EMPLOYERS A-Z (multiple fictitious entities); JOHN DOE OBSTETRICAL CARE PROVIDERS A-Z (multiple fictitious persons and/or entities) | CIVIL ACTION NO:<br><br>COMPLAINT<br><br>Document Filed Electronically |

## **PARTIES**

1. Plaintiffs Chandaniben Parikh and Sehal Parikh, wife and husband, natural parents of plaintiff K.P., reside at 269 Edgewood Drive, Toms River, Ocean County, New Jersey.

2. Plaintiff K.P., a minor, by and through her Guardians ad Litem, Chandaniben Parikh and Sehal Parikh resides at 269 Edgewood Drive, Toms River, Ocean County, New Jersey.

3. Defendant United States of America (hereinafter "USA") is the duly constituted and sovereign government of the United States of America.

4. Defendant Douglas Gibbens, M.D. is a licensed physician of the State of New Jersey specializing in radiology.

5. Defendant Community Medical Center located at 99 Highway 37 West, Toms River, Ocean County, New Jersey.

6. Upon information and belief, the defendants, John Doe Medical Directors A-Z (multiple fictitious persons); John Doe Employers A-Z (multiple fictitious entities) and John Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities), are citizens of the state of New Jersey or are corporations incorporated under the laws of New Jersey having a principal place of residence and/or business in the State of New Jersey.

## FACTUAL BACKGROUND

7. In May of 2013, plaintiff Chandaniben Parikh was treating with Ocean Health Initiatives a/k/a Ocean Health Initiatives, Inc. (hereinafter "OHI") for a pregnancy.

8. Upon information and belief OHI is an entity organized and existing under the laws of the State of New Jersey and the USA, which at all times relevant hereto, owned, operated, controlled and maintained health care centers located at 301 Lakehurst Rd. Toms River, Ocean County, New Jersey

9. Upon information and belief, defendant, USA has designated OHI a Federally Qualified Health Center, and as such, it is afforded medical malpractice coverage under the Federal Tort Claims Act, U.S.C. sec 1346(b), 2401(b) and 2671 *et.seq.* (also referred to as the Act).

10. Upon information and belief at all relevant times Defendant Ourania Rossetos, M.D. (hereinafter "Dr. Rossetos") was a licensed physician of the State of New Jersey and was employed by OHI.

11. In June, 2013, Dr. Rossetos rendered care and treatment to plaintiff Chandaniben Parikh with respect to her pregnancy.

12. Upon information and belief at all relevant times Defendant Douglas Gibbens, M.D. (hereinafter "Dr. Gibbens") was a licensed physician of the State of New Jersey and was employed by Community Medical Center.

13. In August, 2013, Dr. Gibbens rendered care and treatment to plaintiff, Ms. Moore, with respect to her pregnancy.

14. The pregnancy resulted in the birth of plaintiff, K.P. on 12/18/13.

15. Plaintiff K.P. was born with Down Syndrome, a permanent genetic disorder associated with multiple defects including but not limited to mental retardation.

## JURISDICTION AND VENUE

16. Upon information and belief OHI and its employee, Dr. Rossetos have been deemed to be federal employees acting within the scope of their employment at the time of the alleged events.

17. The United States District Court for the District of New Jersey has subject matter jurisdiction over this matter pursuant to 28 U.S.C. sec. 1346(b), in that this is a civil action on a claim against the United States for money damages for personal injury caused by the negligent act or wrongful act or omission of an employee of the Government while acting within the scope of his or her employment under circumstances where the United States if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

18. The United States District Court for the District of New Jersey has supplemental jurisdiction pursuant to 28 U.S.C sec 1367 over any non Federal Tort Claims Act claims related to the primary suit against the USA including the claim against Dr. Gibbens and Community Medical Center as those claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

19. Plaintiffs have complied with the jurisdictional prerequisite to bringing suit against the USA, pursuant 28 U.S.C. sec 1346 (b), 28 U.S.C sec 2401 (b) and 28 U.S.C. sec 2675 with the timely filing of their administrative tort claim. To that end on April 17, 2014 an administrative claim was filed on behalf of plaintiffs, Chandaniben Parikh, Sehal Parikh, and K.P. with the Department of Health and Human Services (hereinafter DHHS). On August 21, 2014 DHHS denied the claim. Consequently, plaintiffs have exhausted their administrative remedies, a condition precedent to the filing of this action.

20. Venue is conferred pursuant to 28 U.S.C. sec 1402 (b) and is appropriate in the United States District Court for the District of New Jersey in as much as plaintiffs are residents of the State of New Jersey and a "substantial part of the events or omissions giving rise to the claim" occurred in New Jersey. Venue is further conferred in the Trenton vicinage because the plaintiff's county of residence and the location of the events at issue occurred in Ocean County which is included in the Trenton vicinage.

## FIRST COUNT

21. At all times material hereto, the USA funded, owned, operated, managed and/or controlled the healthcare delivered by and through their actual and/or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records, and who were acting within the course and scope of their business and/or employment relationship with the USA in providing care and treatment to plaintiff Chandaniben Parikh.

22. At all times material hereto, the USA acted by and through their respective actual and/or ostensible agents, principals, servants, contractors, and representatives

which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records, and who were acting within the course and scope of their business and/or employment relationship with the USA .

23.     In light of the above-described business and/or employment relationships, the USA is bound by and vicariously liable for the actions and omissions of their actual and/or ostensible agents, principals, servants, contractors, and/or representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records and/or whose identities are known to the USA.

24.     At all times material hereto the USA funded, owned, operated, managed and controlled OHI, a facility authorized and licensed to provide obstetrical and other medical services to the public in general and to Chandaniben Parikh in particular and held out OHI as a health care facility competent to provide these services.

25.     At all times material hereto, plaintiff Chandaniben Parikh looked to the USA and/or its actual and/or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records, to provide medical care and treatment to her in a reasonable, prompt, proper, adequate and appropriate manner.

26. The USA's respective actual and/or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records while acting within the scope of their employment were negligent in their care and treatment of plaintiff Chandaniben Parikh and/or deviated from applicable standards of care in failing to timely offer plaintiff Chandaniben Parikh proper prenatal screening for Down Syndrome and in such ways as discovery may reveal.

27. The USA acting by an through their respective actual and/or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records deprived plaintiffs of information necessary to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus with Down Syndrome, an option that would have been exercised had Chandaniben Parikh and Sehal Parikh been fully informed in a timely manner.

28. The negligence of the USA acting by an through their respective actual and/or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were OHI, Dr. Rossetos and those other health care providers whose names and chart entries appear in the USA's medical records significantly increased the risk (which thereafter occurred) that plaintiff would be deprived of information necessary in order to make a

fully informed decision as to whether or not to continue a pregnancy carrying a fetus affected with Down Syndrome, an option that would have been exercised had Chandaniben Parikh and Sehal Parikh been fully informed in a timely manner.

29. As a result of the carelessness and negligence of the USA, and/or the failure of their actual and/or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, and Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records whose identities are known to the USA to adhere to minimum standards of medical care plaintiffs, Chandaniben Parikh, Sehal Parikh, and K.P. have in the past and will in the future be caused to incur extraordinary expenses to care for the minor plaintiff throughout the minor's lifetime.

30. As a result of The carelessness and negligence of the USA, and/or the failure of their actual or ostensible agents, principals, servants, contractors, and representatives which include federal employees and non-federal employees working on joint ventures or cooperative agreements in support of or on behalf of the USA among which were, OHI, Dr. Rossetos, and those other health care providers whose names and chart entries appear in the USA's medical records whose identities are known to the USA to adhere to minimum standards of medical care plaintiffs, Chandaniben Parikh and Sehal Parikh have in the past and will in the future suffer emotional distress with respect to parenting a child with a severe genetic abnormality.

**WHEREFORE**, plaintiffs demand judgment against defendant U.S.A for damages, losses and expenses pursuant to the Supreme Court case of <u>Procanik by Procanik v. Cillo</u>, 97 NJ 339 (1984), together with interest and costs of suit.

## **SECOND COUNT**

31. Plaintiffs repeat each and every allegation of the preceding Count and make them paragraph 31 of this Count.

32. In August, 2013 Dr. Gibbens held himself out to be a licensed physician of the State of New Jersey specializing in radiology.

33. On August 16, 2013, Dr. Gibbens rendered care and treatment to Chandaniben Parikh with respect to her pregnancy.

34. Dr. Gibbens deviated from applicable standards of care in such ways as discovery may reveal and was otherwise negligent in failing to properly interpret ultrasound imaging and ensure the plaintiffs were informed of the implications of that imaging.

35. At all times relevant hereto, Dr. Gibbens acted as an agent, servant and/or employee of his actual employer, Community Medical Center, or alternatively, as an apparent agent.

36. Under the doctrines of *respondeat superior* and/or apparent authority, defendant Community Medical Center is responsible for the negligent acts committed by Dr. Gibbens and the damages suffered by plaintiffs as a result thereof.

37. At all times relevant hereto, Dr. Gibbens acted as an agent, servant and/or employee of his actual employer, Defendants John Doe Employers A-Z (multiple fictitious entities), or alternatively, as an apparent agent.

38. Under the doctrines of *respondeat superior* and/or apparent authority, defendants John Doe Employers A-Z (multiple fictitious entities) are responsible for the negligent acts committed by Dr. Gibbens and the damages suffered by plaintiffs as a result thereof.

39. The negligence and aforesaid deviations from the applicable standards of care by Dr. Gibbens, deprived plaintiffs of information necessary to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus with Down Syndrome, an option that would have been exercised had Chandaniben Parikh and Sehal Parikh been fully informed in a timely manner.

40. Alternatively, the negligence and aforesaid deviations from the applicable standards of care by Dr. Gibbens, significantly increased the risk (which thereafter occurred) of depriving plaintiffs of information necessary to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus with Down Syndrome, an option that would have been exercised had Chandaniben Parikh and Sehal Parikh been fully informed in a timely manner.

41. As a result of the negligence and aforesaid deviations from the applicable standards of care by Dr. Gibbens, Chandaniben Parikh, Sehal Parikh, and K.P. have in the past and will in the future be caused to incur extraordinary expenses to care for the minor plaintiff throughout the minor's lifetime.

42. As a result of the negligence and aforesaid deviations from the applicable standards of care by Dr. Gibbens, plaintiffs, Chandaniben Parikh and Sehal Parikh have in the past and will in the future suffer emotional distress with respect to parenting a child with a severe genetic abnormality.

**WHEREFORE**, plaintiffs demand judgment against defendants Douglas Gibbens, M.D., Community Medical Center, John Doe Employers A-Z (multiple fictitious entities) for damages, losses and expenses pursuant to the Supreme Court case of <u>Procanik by Procanik v. Cillo</u>, 97 NJ 339 (1984), together with interest and costs of suit.

## **THIRD COUNT**

43. Plaintiffs repeat each and every allegation of the preceding Counts and make them paragraph 43 of this Count.

44. Plaintiffs allege that an insufficient time has passed within which to determine the true identity of any individuals or entities who may have been responsible for formulating and/or implementing policies and procedures concerning the offering of prenatal screening for Down Syndrome during the first trimester at OHI or alternatively that said information will not become available to plaintiff until litigation is commenced.

45. For the purposes of the within Complaint, defendants John Doe Medical Directors A-Z (multiple fictitious persons) are any medical directors, supervisors, administrators or other personnel responsible for formulating and/or implementing policies and procedures concerning the offering of prenatal screening for Down Syndrome during the first trimester at OHI.

46. Defendant John Doe Medical Director A-Z (multiple fictitious persons) deviated from applicable standards of care in such ways as discovery may reveal and was otherwise negligent in failing to formulate and/or implement appropriate policies and procedures concerning the offering of prenatal screening for Down Syndrome during the first trimester at OHI or in such other ways as discovery may reveal.

47. As a result of the negligence and aforesaid deviations from the applicable standards of care by defendant John Doe Medical Director A-Z (multiple fictitious persons), plaintiffs were deprived of information necessary in order to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus with Down Syndrome, an option that would have been exercised had plaintiffs been fully informed in a timely manner.

48. Alternatively, the negligence and aforesaid deviations from the applicable standards of care by defendant John Doe Medical Director A-Z (multiple fictitious persons) significantly increased the risk (which thereafter occurred) that plaintiffs would

be deprived of information necessary in order to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus affected with Down Syndrome, an option that would have been exercised had plaintiffs been fully informed in a timely manner.

49. At all times relevant hereto, defendant John Doe Medical Director A–Z (multiple fictitious persons) acted as an actual or apparent agent, servant and/or employee of defendant USA and/or John Doe Employer A-Z (multiple fictitious entities).

50. Under the doctrines of *respondeat superior* or apparent authority, defendant USA or John Doe Employer A-Z (multiple fictitious entities) is responsible for the negligent acts committed by defendant John Doe Medical Director A-Z (multiple fictitious persons) and the damages suffered by plaintiffs as a result thereof.

51. The minor plaintiff's disabilities have and will result in extraordinary expenses throughout the minor plaintiff's lifetime.

52. Plaintiffs Chandaniben Parikh and Sehal Parikh, mother and father of the minor plaintiff, have in the past and will in the future suffer emotional distress with respect to parenting a child with a severe genetic disorder.

**WHEREFORE**, plaintiffs demand judgment against defendant USA; John Doe Medical Director A-Z (multiple fictitious persons); and John Doe Employers A-Z (multiple fictitious entities) for damages, losses and expenses pursuant to the Supreme Court case of Procanik by Procanik v. Cillo, 97 NJ 339 (1984), together with interest and costs of suit.

## *FOURTH COUNT*

53. Plaintiffs repeat each and every allegation of the preceding Counts and make them paragraph 53 of this Count.

54. Plaintiffs allege that an insufficient time has passed within which to determine the true identity of any other individuals or entities who may have negligently contributed to their being deprived of information concerning the genetic status of the fetus which plaintiff Chandaniben Parikh was carrying, or alternatively, that said information will not become available to plaintiffs until litigation is commenced.  For the purposes of the within Complaint, said individuals and business entities have been designated as John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities).

55. Defendants John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities) are any medical care providers who treated plaintiff Chandaniben Parikh during her pregnancy.

56. Defendant John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities) deviated from applicable standards of care in failing to provide information to plaintiffs Chandaniben Parikh and Sehal Parikh which was material to their ability to make informed choices regarding the course of her pregnancy and/or in such other ways as discovery may reveal.

57. As a result of the negligence and aforesaid deviations from the applicable standards of care by defendants John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities), plaintiffs Chandaniben Parikh and Sehal Parikh were deprived of information necessary in order to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus affected with

Down Syndrome, an option that would have been exercised had they been fully informed in a timely manner.

58.  Alternatively, the negligence and aforesaid deviations from the applicable standards of care by defendants John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities) significantly increased the risk (which thereafter occurred) that plaintiffs would be deprived of information necessary in order to make a fully informed decision as to whether or not to continue a pregnancy carrying a fetus affected with Down Syndrome, an option that would have been exercised had she been fully informed in a timely manner.

59.  At all times relevant hereto, defendant John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities) acted as an agent, servant and/or employee of defendant USA or John Doe Employer A-Z (multiple fictitious entities).

60.  Under the doctrines of *respondeat superior* or apparent authority, defendant USA or John Doe Employer A-Z (multiple fictitious entities) is responsible for the negligent acts committed by defendant John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities) and the damages suffered by plaintiffs as a result thereof.

61.  The minor plaintiff's disabilities have and will result in extraordinary expenses throughout the minor plaintiff's lifetime.

62  Plaintiffs Chandaniben Parikh and Sehal Parikh , the parents of the minor plaintiff, have in the past and will in the future suffer emotional distress with respect to parenting a child with a severe genetic disorder.

63.     Plaintiffs, reserve the right to amend the within Complaint to add additional defendants when and if the identity of said individuals or business entities becomes known.

**WHEREFORE**, plaintiffs demand judgment against defendants John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities); USA and John Doe Employers A-Z (multiple fictitious entities) for damages, losses and expenses pursuant to the Supreme Court case of Procanik by Procanik v. Cillo, 97 NJ 339 (1984), together with interest and costs of suit.

### *FIFTH COUNT*

64.     Plaintiffs repeat each and every allegation of the preceding Counts and make them paragraph 64 of this Count.

**WHEREFORE**, plaintiffs demand judgment against defendants USA; Douglas Gibbens, M.D., Community Medical Center, John Doe Medical Director A-Z (multiple fictitious persons); John Doe Employers A-Z (multiple fictitious entities) and John/Jane Doe Obstetrical Care Providers A-Z (multiple fictitious persons and/or entities), jointly, severally & in the alternative for damages, losses and expenses pursuant to the Supreme Court case of Procanik by Procanik v. Cillo, 97 NJ 339 (1984), together with interest and costs of suit.

WEISS & PAARZ, P.C.
Attorneys for Plaintiffs


BY: /s/ Marc C. Johnson
    MARC C. JOHNSON, ESQ.

Dated: 11/7/14